and we'll move to our second case this morning. Judge Sikes, before we do that a sign just came up on my computer that said your internet connection is unstable. Did either of the other of you receive that message? Did anyone else receive that message? I don't think so. I know, Judge Roder, it might have been just a message on your screen. Sometimes when the bandwidth that says automatic zoom message, you should be okay. Oh, thank you very much. I'm sorry, everyone. Thank you. And we can still hear you and see you. All right. Good morning. Our second case this morning is Driftless Area Land Conservancy v. Michael Huebsch and Rebecca Valk. I see Ms. Whiting and Mr. Lerner. Ms. Whiting, you're first. Good morning, Your Honor. May it please the Court. Christiane Whiting appearing on behalf of the defendants' appellees, Rebecca Cameron Valk and Michael Huebsch. Your Honors, these defendants are being sued in their official capacity and they are therefore protected by the 11th Amendment Sovereign Immunity. Why is Mike Huebsch still in this case? He's not on the PSC anymore. That's a great question. And he obviously has no ability to do anything with respect to the claims that they're calling it for action against. But the bigger, he was a former commissioner at the time. Right, but in an official capacity suit under Ex parte Young, if there's a change in the office holder, the previous office holder is dropped from the case and the new office holder is substituted in. Who's the new PSC commissioner who replaced Mike Huebsch? The new PSC commissioner is Commissioner Huebner. They have not made a claim to substitute Commissioner Huebner. And the nature of these claims also make that problematic for the plaintiffs. Their claim is with respect to bias that supposedly was held by Commissioner Huebsch. And it is inappropriate to try to assign that bias to a new commissioner. But there are a number of... Well, it's not a matter of assigning the bias to the new commissioner. The suit, if it's a true Ex parte Young suit for prospective injunctive relief, official capacity suit, then it's a suit against the office or the governmental body. And the identity of the office holder, the office holder is just the nominal defendant, not a wrongdoer. And so it doesn't really matter whether Mike Huebsch is in or out of the case. If the relief is truly cognizable, prospective relief under Ex parte Young, then Mike Huebsch drops out of the case and the new commissioner is substituted. And we do that automatically, frankly, in other similar suits, if there's a change in the office holder. Well, you're exactly right. But what are they trying to enjoin? What would they be enjoining Commissioner Tibner or Commissioner Vaughn or Commissioner Nowak from doing going forward? They haven't asked for any prospective relief. They aren't asking them to stop violating federal law in any way. What they are asking for is to void or vacate the prior decision of the commission. That's not Ex parte Young. Ex parte Young, the purpose of Ex parte Young is a premise or a proceed where it's not really an action against the commission itself challenging a prior order, but it's asking a particular official to stop doing something that violates federal law. Virginia office says it rests on the premise, less delicately called a fiction, that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the state for sovereign immunity purposes. The doctrine is limited to that precise situation and does not apply when the state is the real substantial party in interest. Here what they're asking for is they don't like the prior decision that the agency made and they want it to be voided or vacated. They're not asking for these commissioners to stop enforcing any particular provision in the permit that they say violates federal law, which was the case in Verizon or MCI or the Barnes-Nicoll case. They haven't pointed to any way in which the order requires parties to do something that will violate federal law such that the federal courts have to step in to protect federal supremacy. That's not the case here. What they're claiming is that they had an issue with the process that occurred in a prior action that happened already that is completed and that's not Ex parte Young. So this is clearly an attack on the prior agency decision and that's why these three factors are in place for the Ex parte Young test. They require a violation of federal law, first of all. They require that that violation be ongoing and they require that they be asking for prospective relief that can actually do something to remedy that problem. They can't meet any of those. First of all, they haven't alleged that there's any federal law that's been violated. As I just said, there isn't anything in the order or the permit they're claiming violates federal law and what they are claiming is that their property has been taken. Well, the commission isn't taking any property. That would be the transmission company somewhere down the line and they may never have to go there. If they negotiate with the parties to come to some sort of agreement on compensation, they might not ever have a taking. They might not ever take any some of the particular property of these plaintiffs. I thought the takings claim was dismissed. The private takings claim was dismissed. The district court's order was frankly a little unclear as to what they did with the Fifth Amendment takings claim. It seemed like he sort of conflated that with the due process claim, but all of the harm that they're talking about throughout the complaint all relates to this property interest. If they don't have a property interest, they don't have a federally constitutionally protected interest. So it all relates to property. As I understand it, it's a due process claim, not a takings claim that we have left in the case, right? Right. Well, I mean, it's not clear to me whether count two was entirely dismissed or not or whether it still has some. He was clear that he dismissed count three on the private taking. It was unclear as to whether there is a Fifth Amendment taking claim still there. But either way, we think that they don't have anything because they aren't alleging a taking. All that's been done is that the commission has made a legislative determination that the project can be built. Right. We don't have a regulatory takings claim lurking about in this case. No. And if we did, it would have to be substantially all of the property interest would have had to be taken. They haven't alleged that. They haven't. That's not in their complaint. What they've complained is that there was a due process violation that resulted in the commission giving the transmission companies permission to use eminent domain later on. And there is no authority saying that giving a party permission to use eminent domain later on is a taking. In fact, the Danforth case and the Delaware River Keepers case and the Charles Aren't case all say that a legislative determination is not a taking. So we haven't done anything with respect to their property interests. And that's the only thing that they say is how they've been injured. They haven't been injured in any way. That is a continuing harm going forward. Their claims of bias are also way below the standard of what could be actionable. And in order to get under ex parte, you have to have violated a federal law in the first place. And all they've said is that Commissioner Vaughn used to work for some utility companies that are not parties to the underlying docket, and that there might be an appearance of bias. Well, her client owns the transmission company. It owns a percentage of one of the parties to the docket. That's correct. But there's no allegation. Sixty percent. Sixty percent. That's quite a percentage. There was a relationship. She recused herself from all of the actions in which she was substantially and personally involved in any of her prior work. And there's no allegation that the entities that she did work for actually did support this project. We don't know that. There's and with respect to Commissioner Hipsch, all they have alleged is that he went to some meetings with MISO, which is where he learned about general issues in the utility industry. And if we had a standard that you couldn't work with the regional transmission organization in your role as a commissioner to keep abreast of the issues in the industry, that would be extremely problematic. And we'd have this challenge in every single case before the commission. This case is coming to us on a motion to dismiss, right? That's correct. We have to assume the truth of the plaintiff's well-pled facts for these purposes. And what we have to do, it seems to me, is focus on our only task, and that is sovereign immunity. That's correct. Sovereign immunity, they have pled that Ex parte Young is an exception to sovereign immunity. And one of the elements of that exception is that there has been a Ashcroft v. Iqbal case explains that in that circumstance where the exception or the immunity question includes a question of whether an element has been pled, then you can consider. In fact, you must necessarily consider the validity of those claims as your, where they've been properly alleged. You don't have to go to the ultimate merits, but you have to see if they have an adequate allegation of a violation of federal law. And they don't have that here. You're right. We do have to take actually well-pleaded facts in their favor, but theirs are purely speculative. They're saying that she might have been, there might be an appearance of bias due to her relationship with these other entities. And with respect to Commissioner Hitch, they haven't found any particular communications that were onto the Cardinal Hickory Creek line. They say that they were on the subject matter. Of course there were. They talk about transmission in general at MISO meetings. The Cardinal Hickory Creek line was that's when they had a role in the Cardinal Hickory Creek transmission line. And I think it's important to note as well that Commissioner Hitch does not have fiduciary duties toward MISO when he's in those meetings. He's there as required by federal law to bring the state's interests and to be there and to keep the interests of his constituents in mind, not to advocate for any particular result that doesn't have the state's interest in mind. Look, you're correct that their accusations are not enough, but the plaintiffs have alleged much more than bare allegations. Indeed, some might think that the allegations against the two commissioners are troubling. I find it somewhat unusual that Commissioner Hutch was meeting regularly with the MISO board and senior executives while overseeing, presiding over a hearing in which MISO was an intervening party. And, you know, to leave a position representing a 60% owner of one of the parties on a Friday and join the commission presiding over the case on a Monday, it's a little unusual. So, you know, whether they'll be able to show actual bias on the part of the commissioners or not, I don't know. But I don't think that's for us at the present time. The only question, it seems, is whether Young creates an exception to sovereign immunity. But just to your point about whether there's the sufficiency of those allegations, it's important to remember that they've ignored the presumption of impartiality. You have to start from the position that these people are able to get over those presumptions of impartiality and they go through a confirmation process. All this information was known. There were accusal statements, all kinds of other due process things. But more importantly, to your point, Ex parte Young does not apply. They are not claiming that there's continuing violation of law. There's not a continuing bias. What are they pointing to that these defendants are continuing to do that the federal courts have to step in to stop to protect federal supremacy? If they're claiming about a due process violation, they can pursue that in the state court process. And there are all kinds of procedural safeguards there. They can bring a claim and say that there should have been recused. Right now, we have the only factors needed for Ex parte Young to apply. The complaint alleges an ongoing violation of federal law and seeks relief that can properly be characterized as prospective. And I think that's what we need here. I have trouble understanding what the ongoing violation of federal law is. The violation was the failure to recuse themselves that occurred in the past. Or was it the bias that occurred in that process that again occurred in the past? That was a prior violation, not an ongoing violation. In the cases in which Ex parte Young has been applied, they have been circumstances under which the officials are going to continue enforcing a regulation that was seen to violate federal law. Or in Verizon or in MCI, it was a contract that those commissions would be enforcing that required the parties to follow the terms of that contract, which would require them to violate federal law. There was a preemption issue. Here, they're complaining about the process, a prior act. And what they want is avoid or vacate. So they don't have the ongoing violation, and they don't have the prospective relief. They want void or vacate. They say enforcement, but that's just window dressing. What enforcement do they want to stop these defendants from doing? What actions are these defendants going to do? These defendants are done with the eminent domain question. They said that this project can be built. And then from there on, any eminent domain happens in Chapter 32 with respect to the transmission companies. The commission made its determination based on 196.491 to determine whether this project was necessary and was complied with the public interest. It's a legislative determination. They have to apply the statutory criteria, but they're not continuing to do anything that violates federal law. The PSC still has regulatory authority over the permit holders during the course of the project. It does. And if you look carefully at the final decision, it lays out terms and conditions that permit holders must follow. If you were to enjoin the commission from enforcing the permit, that would just take those protections away. The only enforcement authority going forward is to say, applicants, you need to make sure that you're following these best management practices. You need to make sure that you're protecting the environment. You need to make sure that you're not making a minor route adjustment that's going to affect other landowners. That has to be the ones who've already gotten notice and an opportunity to be heard. Those are all protective of these that is ongoing. And they're not asking for prospective relief. They're asking for the court to avoid and vacate the final decision. All right. Thank you very much. Mr. Lerner. Thank you, Chief Judge, and good morning, Your Honors. I'm Howard Lerner, representing the Valley Conservation Groups. Plaintiff's lawsuit is against the commissioners and their official capacity. Plaintiff's complaint seeks prospective relief, including prohibiting the defendants from enforcing the Certificate of Public Convenience and Necessity. Mr. Lerner, I'll ask you the same question that I asked Ms. Whiting. Why is Mike Hibbs still in this case? Your Honor, we address that at page 30 of our brief. As Judge Conley below said, he would allow us to substitute the party if we want to do so. And he pointed out at argument, in the footnote 10 of page 30 of our brief, that if the commission could simply substitute a commissioner between the constitutionally inappropriate decision and then claim that the constitutional violation is somehow wiped out, that just simply can't be right. Well, that is right. If this is a true ex parte young case, then the defendants are nominal defendants. The suit is really against the arm of the state, the commission. That's correct. And so it doesn't matter who's named. You name the commissioner, the office holder. But this simply brings to the surface the problem with this claim as an ex parte young claim because your focus is on the who presided over the permit proceeding, which is completed. And so your process violation is completed. It was completed back in September of 2019 when the permit was issued. And so you're seeking retrospective relief. And the fact that the current members of the commission, the to the extent that the permit holders would violate the terms of the permit, doesn't make this an ongoing violation against your clients. Your clients was complete when the permit was issued, assuming that there was a due process violation here. Your Honor, with due respect, we differ and we think the district court got this correctly. And here's why we differ. Because the commission has explicitly retained jurisdiction. The commission has ongoing enforcement authority, including route changes, which they've already exercised. The commission has supervisory review of many aspects of compliance. The commission can grant or deny approval of project changes. And under Wisconsin law, the commission may at any time rescind, alter, or amend the final decision. I understand the regulatory structure, but that doesn't make what the commission is currently doing a due process violation against your client of an ongoing nature. The current commission is conflicted. Your Honor, there was a decision made by the commission, but for that decision, the transmission companies could not move forward with the transmission line. That decision is completed. If this is an appropriate exercise of Ex parte Young, then every act of completed act of state administration could be construed or characterized as an ongoing violation. And that's just not an appropriate use of Ex parte Young. Your Honor, I don't think that's correct. If you look, for example, what the first circuit decided in town of Barnstable, it's exactly this sort of case. When a commission makes a decision and the commission has ongoing enforcement authority, of course, we couldn't have challenged that issue, the commission's decision before it was written. Inherently, what you're doing is challenging a commission decision that in this case was made in violation of federal law and has prospective effect. If the commission decision was unconstitutional and we believe it was, it violated federal law. It has prospective effect because but for the commission's decision, but for the ticket that they got from the commission, the transmission companies could not go forward. It was an adjudicatory decision by the commission, not a legislative decision. And the commission admits that at page 49 of its brief, where they say it's an adjudicatory decision. What the legislature has done here is it said, in order for a transmission company to go forward and exercise eminent domain and take land and take our plaintiff's property, they have to have received approval from the commission. That commission decision was constitutionally flawed. And I'll get to just a couple of the facts here, if I might, because that flawed decision is the but for, but for that decision, but for its continued validity, but for the commission having retained jurisdiction and being able to change it, which the Wisconsin law provides, there would not be harm to our plaintiffs. That decision can and should be void. And some of the factual context here, just because it's become a little bit sanitized as Judge Rovner was referring to, the commission's meetings, hundreds of phone calls and regularly socializing with transmission company executives. And it gets worse from there. As Judge Rovner, you pointed out, he joined the MISO transmission group's advisory committee, while MISO was an active litigating party before the commission. And he was regularly meeting with the president of MISO and his board of directors, MISO and the three transmission companies entered into a common interest agreement to litigate the But we don't have the merits before us, Mr. Lerner. We have only the sovereign immunity question. That's correct. And I'm simply referring to cleaning up a little bit the sanitized facts you got from Ms. Whiting. I don't believe that any judge in this court would be having the sort of meetings, the hundreds of phone calls while a case was pending. You wouldn't be meeting with the senior business executives. Again, we're not going, we're not deciding any of those issues. Good. Your honor, I'm going right back to Ex parte Young. I've heard you, Chief Judge. They're being sued in their official capacity. Not a question there. We are seeking prospective relief to prohibit the defendants from enforcing their order, the Baratek v. McCann case from this court, MCI from this court, and Barnstable from the First Circuit. The problem with that argument, Mr. Lerner, is that all of those cases involved a regulatory order or permit of a commission. In several of them, it was, you know, public service commissions like the one that we have at issue here, but it was the telecommunications context. And the orders in question required the plaintiffs to perform services and pay money pursuant to interconnection arrangements with non-incumbent phone carriers, etc. The plaintiffs in the case actually had regulatory, ongoing regulatory duties that they were claiming were preempted or that were contradicted by federal law. So there was an ongoing federal law violation that was real and concrete and in fact ongoing in those cases because the engage in this interconnection arrangement. Your Honor, let me address that. Your claim is a claim for a due process violation that occurred because allegedly conflicted PSC commissioners issued a permit. That's all in the past. That violation was completed in the due process clause by virtue of conflicted decision makers making a decision that impacts your client. Except, I guess, perhaps with respect to Commissioner Volk to the extent that she's still on the commission and may have the same sort of conflict that you're raising here. But with respect to the commission itself, it's not doing, you know, the order is has been issued. The permit has been granted. Those are completed acts. Those are not ongoing acts. Your Honor, I'm going to do my very best to address your question head-on and persuade you that you ought to go in a different direction than you're suggesting. Fair enough? Yes, that's why I asked the question. I'll go right to your question. First of all, the identity of the plaintiff, the Supreme Court has said in the Virginia office case, doesn't matter for Ex parte Young purposes. Secondly, the Barnstable case, the First Circuit case, doesn't involve the plaintiff or the appellant being a utility. It involves private plaintiffs and municipal plaintiffs like we are in this case. So those are quite different, Your Honor, than you suggested. Yeah, I'm focusing on the Supreme Court's cases and our own cases. Those are the ones that are binding on us. That's correct. Barnstable's not binding. I would suggest that it's well-reasoned and it's persuasive authority. Virginia office is a Supreme Court decision, as you know. So that is, of course, binding. So let me turn to that. The statement that you're seizing on from that case had to do with the sort of intramural fight between two state agencies. It has nothing to do with the question that I'm raising, which is what is the ongoing violation against your clients? Your Honor, I was addressing the first part of what you raised in terms of the party, where that is what the Supreme Court said. And now let me turn to the ongoing violation. There is a order issued by the commission that we believe in well-pleaded facts content is unconstitutional. It's the but for aspect of that order. But for that order of the commission and its continued validity, the transmission companies would not be allowed to go forward in condemning land. And for example, Your Honor, if the commission decided tomorrow to alter, amend or rescind or withdraw its order, which it's entitled to do under Wisconsin law, then the transmission companies could not go forward. Period. The commission explicitly retained jurisdiction. And we all know what it means when a commission or when a court retains jurisdiction, that's in the commission's order. The commission said it has continued jurisdiction to assess route changes. And it's already done that once. The commission, and we describe it at page 13 and 14 of our brief, and for time reasons, I'm not going to go over each of the pieces, but the commission is still in the game. The key point here is though, but for the operation of the commission's order, the seizing of land, the private eminent domain could not be done here. So the relief we are seeking is prospective. We are seeking to enjoin the enforcement of an order that allows the transmission companies to take my client's land and impair and harm my clients and others' interests. And that's what the district court we believe appropriately found, that there's a nexus, there's an inextricable connection between the order, which is very much like some of the contracts approved in the other cases we've talked about, Verizon, MCI. This is like the Ameritech versus McCann case that I believe Judge Schwab wrote the opinion. This is like Farnstable in the First Circuit. But for the illegal order of the continue to exercise eminent domain, that's their ticket. That's the ticket that they have to have punched. That's the ticket that continues to be ongoing. And the relief we are seeking is prospective. And now it's the relief of enjoying that order so that the land being taken won't happen and our plaintiff's interests will be protected and not harmed. And I would suggest with due respect, Chief Judge Sykes, that it would be just a significant departure and out of line with the four utility cases that we've cited here. In no particular order, Verizon, MCI, Ameritech versus McCann, and Farnstable, all of which look to whether the commission's order itself was in violation of federal law. And if it was, it can't have prospective applicability. And therefore, the exception to Ex parte Young has been satisfied. So for these reasons, Your Honor. What about Ms. Whiting? Ms. Whiting argues that an injunction against the commission removes the commission from its limited enforcement authority but has no effect on the permit. That's simply not correct, Your Honor. The commission has retained jurisdiction. And if the order that is constitutionally flawed is found to be void and enforced, prohibited from having effect going forward, then the transmission companies simply as a matter of law do not have the authorization to move forward with the transmission line and exercise private eminent domain. We've addressed it further in our briefs. I realize my clock is running out. I've been trying to respond to Your Honor's questions in good faith. For the reasons we've described this morning and in our briefs, this court should affirm the district court's ruling on the motion to dismiss with regard to sovereign immunity and to the extent that, well, I think it's clear from the panel's discussion, this is not an appropriate case for pendant appellate jurisdiction. You need reach those issues. You don't have jurisdiction to get there. The motion to dismiss should be affirmed. Thank you very much for your consideration. Thank you. Ms. Whiting? You're still on mute. Thank you, Your Honor. I believe I did use all my time during my first week. But if you have some additional questions, I'd be happy to answer them. Anything further for Ms. Whiting? I have just one, Ms. Whiting. Could there be any action taken by the commission, in your view, that would have prospective effect for the purpose of exparting him? Not that they've alleged. They have not alleged anything that would have any harm to the plaintiff. So what they've alleged is that the commission entered an order which gives permission to the would do to harm the plaintiffs. My question is a little broader. I appreciate your response. Is your position that whatever the commission does, by way of a final order, never has prospective relief? Whatever the commission does by way of a final order, no. The MCI cases, the Verizon cases, those were cases in which there was a requirement that the parties to put into place. And there could be enforcement going forward. They would be required to charge those. And so there could be a prospective action. But that's not the case here. There's nothing in this order that they're alleging is illegal. Okay. Thank you. I have another question. May I ask it of Ms. Whiting? Thank you. Suppose the permit holders do not abide by the terms of the permit, and they begin building, okay, where they weren't given permission. And the commissioners once again say, we're not going to enforce the provisions of the permit. Because the permit holders paid us a $1 million bribe. With this lack of enforcement, wouldn't that be an ongoing and future violation of federal law that caused injury to the plaintiffs? That's not an allegation in this case. Of course it isn't. But it's a hypothetical. Right. This is a motion to dismiss, though. So we're looking at what they actually alleged. And they didn't allege that there's ongoing bias that's being used to enforce the permit. But you understand my problem. What if a commissioner does something so outrageous that, you know, all of our eyes pop out? Right. And I want to... That is the decision. That's the decision. And two days later, she leaves the commission. Are you saying that that's it? I'm saying that there's no federal cause of action necessarily. So the federal courts need to step in when there isn't a remedy for a due process violation. Here, if they have an issue where they think that there was some bias that occurred in this process, they can go through Chapter 227 and make those allegations. It's not that they can't make due process claims. They just don't have a federal cause of action where the federal courts don't have to step in to stop a continuing violation of federal law or where there isn't an adequate process for pursuing those claims in the state process. That's not this case. Your Honors, if I might have 15 seconds to respond. I was going to ask if he might, but I've never said that. Yeah, this is a little unorthodox, but it's fine. Go ahead, Mr. Lerner. First of all, with regard to state remedies, Your Honors, the Supreme Court, in its Nick decision in 2019, made clear that the pathway on these sorts of appeals involving takings is the federal court. It reversed 35 years of law. Williamson County said plaintiffs don't have to exhaust state remedies. This circuit in the Bradley case has said that 1983 due process actions appropriately belong in the federal courts. We have filed the federal court, federal constitutional issues in the federal court, the state issues in the state court, and that's what the operative law is here. But as a practical matter, to answer Judge Roebner, the first part of your question, there is continuing enforcement by the commission. The commission has retained jurisdiction to do that. That's explicitly in their order. And with due respect to Judge Sykes, Chief Judge Sykes' earlier question to me, that retention of jurisdiction and the actions that the commission both is taking and allows the transmission companies to take, the but-for point that I made, puts this squarely in the Barnstable, Ameritech versus McCann, MCI, and Verizon situations. We've satisfied the conditions of Ex parte Young, and therefore the district court, which so found, should be affirmed. Thank you. All right. Ms. Whiting, in fairness, you have an opportunity to respond. Respectfully, just to address the Nick citation, I think when you look at that case, case judges, you should understand that that was where there was a taking. We're not talking about a taking here. In the Nick case, there was a cemetery that the ordinance said, starting now, people can use your cemetery on an ongoing basis. We don't have a taking yet. So what Nick stands for doesn't have application here. And I would just repeat again that there is no case law establishing a but-for test for Ex parte Young. You need an ongoing violation of law and a request for prospective relief. They don't have either here. The decision should be reversed. All right. Thank you very much. Thanks to both counsel. And we'll take the case under advisement and the court will take a brief recess before we call the third case this morning. Thank you, Your Honor. Thank you.